**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

|  |  |  |
|---|---|---|
| D&L, LLC d/b/a D&L, Inc., | ) | Civil Action No.: 4:26-cv-03289-SAC |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **VERIFIED COMPLAINT** |
|  | ) | **(Jury Trial Demanded)** |
| Hill Plumbing Company, Inc. d/b/a Hill | ) |  |
| Plumbing & Air; Hill Mechanical, LLC d/b/a | ) |  |
| Hill Plumbing & Air; Hill Plumbing & | ) |  |
| Electric Co., Inc. d/b/a Hill Plumbing & Air; | ) |  |
| Aaron Crawford; and Steven Hayes, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

Plaintiff D&L, LLC d/b/a D&L, Inc. ("Plaintiff" or "D&L"), complaining of Defendants

Hill Plumbing Company, Inc. d/b/a Hill Plumbing & Air ("Hill Plumbing"), Hill Mechanical, LLC

d/b/a  Hill Plumbing & Air ("Hill Mechanical"), Hill Plumbing & Electric Co., Inc. d/b/a Hill

Plumbing & Air ("Hill Electric") (collectively, "Hill"), and Defendants Aaron Crawford

("Crawford") and Steven Hayes ("Hayes"), alleges as follows.

## NATURE OF THE ACTION

1.     This action arises from a coordinated scheme by Defendants to use Plaintiff's own

confidential business information to compete against it. While still employed by Plaintiff,

Crawford and Hayes secretly transmitted Plaintiff's pricing, bids, customer information, and

internal documents to a direct competitor, Hill, and then used that information to divert customers,

employees, and business opportunities away from Plaintiff.

2.     Defendants' misconduct culminated in a coordinated departure in February 2026,

in which Crawford, Hayes, and multiple key employees left Plaintiff simultaneously to join Hill.

Armed with Plaintiff's confidential information and established customer relationships, Defendants immediately began competing against Plaintiff using Plaintiff's own proprietary materials and workforce.

3.     Defendants' conduct was not isolated or incidental, but part of a deliberate and coordinated effort to misappropriate Plaintiff's confidential information, capture its customers and workforce, and unfairly accelerate Hill's competitive position at Plaintiff's expense.

4.     In addition to the foregoing misconduct, Hayes engaged in separate and independent wrongful conduct calculated to further harm Plaintiff.  During his employment, Hayes unlawfully converted Plaintiff's funds by diverting payments belonging to Plaintiff for his personal use. After leaving Plaintiff, Hayes escalated his misconduct by contacting businesses and prospective employees within Plaintiff's market and making false and defamatory statements about Plaintiff, falsely accusing Plaintiff of engaging in improper and unethical business practices. These statements were knowingly false, were made with the intent to damage Plaintiff's reputation and disrupt its business operations, and in fact interfered with Plaintiff's efforts to recruit employees and maintain business relationships.

5.     As a result of Defendants' coordinated and wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial and irreparable harm, including the loss of customers, employees, confidential information, goodwill, and revenue.

## PARTIES

6.     Plaintiff is a limited liability company organized under the laws of Arkansas with its principal place of business in Mississippi County, Arkansas. For purposes of diversity jurisdiction, Plaintiff is a citizen of Pennsylvania, Arkansas, and New Jersey because it is a limited

liability company whose members are individuals who reside in these states. Plaintiff is authorized to do business in South Carolina and has an office in Darlington County, South Carolina.

7.    Upon information and belief, Hill Plumbing is a corporation organized under the laws of South Carolina with its principal place of business in Sumter County, South Carolina and does business in Florence County, South Carolina.  Hill Plumbing is a competitor of Plaintiff.

8.    Upon information and belief, Hill Mechanical is a limited liability company organized under the laws of South Carolina with its principal place of business in Sumter County, South Carolina and does business in Florence County, South Carolina.  Hill Mechanical is a competitor of Plaintiff.

9.    Upon information and belief, Hill Electric is a corporation organized under the laws of South Carolina with its principal place of business in Sumter County, South Carolina and does business in Florence County, South Carolina.  Hill Electric is a competitor of Plaintiff.

10.    Upon information and belief, Crawford is an individual who resides in Florence County, South Carolina.  He was formerly employed by Plaintiff.

11.    Upon information and belief, Hayes is an individual who resides in Florence County, South Carolina.  He was formerly employed by Plaintiff.

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.    Complete diversity exists because Plaintiff is a citizen of Pennsylvania, Arkansas, and New Jersey, and all Defendants are citizens of South Carolina.

14. The Court has personal jurisdiction over Hill Plumbing because Hill Plumbing is a corporation organized under the laws of South Carolina, does business in South Carolina, and maintains its principal place of business in South Carolina.

15. The Court has personal jurisdiction over Hill Mechanical because Hill Mechanical is a limited liability company organized under the laws of South Carolina, conducts business in South Carolina, and maintains its principal place of business in South Carolina.

16. The Court has personal jurisdiction over Hill Electric because Hill Electric is a corporation organized under the laws of South Carolina, does business in South Carolina, and maintains its principal place of business in South Carolina.

17. The Court has personal jurisdiction over Crawford because he is domiciled in South Carolina.

18. The Court has personal jurisdiction over Hayes because he is domiciled in South Carolina.

19. Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in South Carolina. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

20. Venue is proper in the Florence Division of this Court pursuant to Local Civil Rule 3.01 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Florence County and Darlington County, and because Defendants Crawford and Hayes reside in Florence County.

**FACTS**

**A.     Plaintiff's Business, Trade Secrets, and Customers.**

21.     Plaintiff is in the business of providing a full range of heating, ventilation, air conditioning, and refrigeration ("HVACR") services, including design, engineering, installation, and maintenance of commercial and industrial projects, as well as providing services related to custom ductwork and fabrication, welding, and installation of sheet metal, for businesses and organizations throughout South Carolina.

22.     Plaintiff has been established in this competitive industry for an extensive period of time over which it has developed and earned a reputation as a reputable and highly regarded business, the preservation of which is important to its continued business success.

23.     Plaintiff has substantial knowledge and experience relating to its business and has expended substantial sums of money, resources, and effort in developing valuable, proprietary, confidential information, including but not limited to trade secrets, customer lists and relationships, pricing and bid structures, proposal templates and workups, vendor relationships and pricing, and internal processes and business methods (collectively, "Confidential Information and Trade Secrets").

24.     Plaintiff's Confidential Information and Trade Secrets are valuable, special, and unique assets that are vital to its business, enabling Plaintiff to compete aggressively and successfully in the marketplace.

25.     Plaintiff strongly guards and protects its Confidential Information and Trade Secrets, which are not known outside of the company's business, are not known by all employees of the company, and are not readily acquirable or duplicable by others.

26.     Plaintiff's contacts and relationships with customers, potential customers, vendors, and other parties with whom Plaintiff contracts and deals (collectively, "Customers") are a substantial asset, extremely valuable, and an integral part of the company.

27.     Plaintiff has a protectable interest in the goodwill of its Customers against appropriation by Plaintiff's former employees, independent contractors, competitors, and others.

**B.     Crawford's and Hayes' Employment and Duties.**

28.     On or about June 24, 2013, Plaintiff hired Hayes as a supervisor.

29.     On or about May 20, 2019, Plaintiff hired Crawford as a business manager.

30.     Crawford and Hayes were trusted employees with access to Plaintiff's Confidential Information and Trade Secrets.

31.     As employees, Crawford and Hayes owed Plaintiff duties of loyalty, confidentiality, and good faith.

32.     Crawford and Hayes were prohibited from disclosing Plaintiff's Confidential Information and Trade Secrets, competing with Plaintiff during employment, soliciting Plaintiff's Customers or employees, and using Plaintiff's information and resources for personal gain.

33.     On June 24, 2013, Hayes executed a Receipt and Acknowledgement of Plaintiff's employee manual, his at-will employment, and a confidentiality agreement.

34.     On May 20, 2019, Crawford executed a Receipt and Acknowledgement of Plaintiff's employee manual, his at-will employment, and a confidentiality agreement.

35.     Hayes' and Crawford's confidentiality agreements (the "Confidentiality Agreements") provide:

> I am aware that during the course of my employment confidential information will be made available to me, for instance, product designs, marketing strategies, customer lists, pricing policies and other related information. I understand that this information is proprietary and critical to the success of D&L, Inc. and must not be

given out or used outside of D&L, Inc.'s premises or with non-D&L, Inc employees. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company. I also understand that all legal fees as a result of any breach of confidentiality will be the sole responsibility of the employee.

**C.   Defendants' Misappropriation and Use of Confidential Information and Trade Secrets.**

36.   During their employment, Crawford and Hayes had access to Plaintiff's Confidential Information and Trade Secrets, including customer lists, pricing structures, vendor information, bid documents, and internal proposals.

37.   Upon information and belief, while still employed by Plaintiff, Crawford and Hayes transmitted Plaintiff's Confidential Information and Trade Secrets, including customer information, job bids, and pricing sheets, to Hill.

38.   For example, Crawford forwarded Plaintiff's bid proposals and pricing information, including proposals associated with service contracts and projects, to personal email accounts and to Hill personnel for use in competing with Plaintiff.

39.   On January 26, 2026, Crawford sent two emails to Hill, providing Hill with information regarding Plaintiff's shop operations, including materials enabling Hill to replicate Plaintiff's processes.

40.   Crawford also provided Hill with Plaintiff's proposal forms and submittals, enabling Hill to replicate Plaintiff's bid materials and undercut Plaintiff in the market.

41.   Also on January 26, 2026, Crawford sent an email to Hill, providing Hill with Plaintiff's internal documents related to a project for a medical university.

42.   On January 28, 2026, Crawford sent an email to Hill, providing Hill with a pricing and bid proposal form where Plaintiff had bid on a service contract to a school district.

43.     Hayes likewise forwarded customer communications and bid opportunities to his personal email and withheld or delayed responses to customers in order to divert those projects to Hill upon his departure.

44.     On January 29, 2026, one of Plaintiff's customers inquired if Plaintiff's previously-quoted proposal for a project was still good, but Hayes gave the customer a quote from Hill instead.

45.     Upon information and belief, Defendants further misused Plaintiff's vendor relationships and accounts in order to obtain pricing and quotes for the benefit of Hill.

46.     Upon information and belief, Crawford and Hayes planned at least two meetings with managers of Hill where Crawford and Hayes brought Hill's managers into Plaintiff's private shop, without Plaintiff's authorization, for the purpose of Hill copying Plaintiff's operations and internal processes.

47.     Upon information and belief, one such meeting occurred on December 23, 2025, in Plaintiff's shop in Darlington, South Carolina.

**D.     Defendants' Diversion and Solicitation of Plaintiff's Customers to Hill.**

48.     Upon information and belief, Defendants actively solicited Plaintiff's customers and prospective customers and diverted those opportunities to Hill.

49.     In one instance, Hayes provided a customer with a quote on behalf of Hill for work that had been previously quoted by Plaintiff, thereby diverting the project to Hill.

50.     On January 28, 2026, Crawford received a request for a price quote for installation of grease hoods at a restaurant in Florence, South Carolina, then forwarded the request to Hill.

51.     Defendants also captured ongoing and future projects by holding customer opportunities while Crawford and Hayes were employed by Plaintiff and later redirecting those opportunities to Hill.

52.     On January 22, 2026, Crawford forwarded customer emails and Plaintiff's bids and documents to his personal email address for future use on Hill's behalf.

53.     On January 28, 2026, after receiving a customer's request for a quote from Plaintiff, Crawford forwarded the customer's emails to Crawford's and Hayes' personal email addresses and to Hill.

54.     As a result of Defendants' actions, Plaintiff lost multiple customers and business opportunities that were diverted to Hill.

**E.     Defendants' Diversion and Solicitation of Plaintiff's Employees to Hill.**

55.     Upon information and belief, Crawford and Hayes, while still employed by Plaintiff actively solicited Plaintiff's employees to terminate their employment with Plaintiff and accept employment with Hill.

56.     Upon information and belief, Crawford and Hayes used Plaintiff's internal communications, employee relationships, and knowledge of Plaintiff's workforce to identify, recruit, and induce Plaintiff's employees to leave Plaintiff.

57.     Upon information and belief, Crawford and Hayes coordinated their efforts with Hill to recruit Plaintiff's employees for the purpose of staffing Hill with personnel familiar with Plaintiff's operations, customers, pricing practices, and internal processes.

58.     Upon information and belief, Defendants' solicitation efforts were not incidental or isolated, but rather were part of a coordinated plan to transition Plaintiff's workforce to Hill and thereby weaken Plaintiff's ability to compete in the marketplace.

59.     Upon information and belief, Crawford communicated with Plaintiff's employees regarding resignation from Plaintiff and employment opportunities with Hill, including assisting or encouraging employees to prepare resignation communications.

60. Upon information and belief, Hayes likewise communicated with Plaintiff's employees and used his position of authority to influence employees to leave Plaintiff and join Hill.

61. As a result of Defendants' conduct, multiple employees of Plaintiff, including seven field technicians, terminated their employment with Plaintiff and accepted employment with Hill.

62. On or about February 3, 2026, Crawford, Hayes, and seven of Plaintiff's field technicians left employment with Plaintiff to begin employment with Hill.

63. Defendants' actions caused immediate and substantial disruption to Plaintiff's operations, including loss of skilled labor, delays in project performance, and increased costs associated with recruiting and training replacement employees.

64. Defendants' solicitation of Plaintiff's employees occurred while Crawford and Hayes were still employed by Plaintiff and, therefore, constituted breaches of their duties of loyalty and good faith.

65. Hill knowingly participated in and benefited from the solicitation and hiring of Plaintiff's employees, including employees whom Hill knew, or had reason to know, were being recruited in violation of their duties to Plaintiff.

66. Upon information and belief, Hill encouraged, facilitated, and ratified Crawford's and Hayes' solicitation efforts by offering employment to Plaintiff's employees and coordinating the transfer of those employees to Hill.

67. Upon information and belief, Defendants' coordinated solicitation and diversion of Plaintiff's employees were undertaken for the improper purpose of weakening Plaintiff's business and unfairly enhancing Hill's competitive position.

68.    As a result of Defendants' conduct, Plaintiff suffered loss of employees, loss of productivity, increased labor costs, and harm to its business operations and goodwill.

**F.    Misappropriation and Conversion of Company Funds by Hayes.**

69.    Upon information and belief, during his employment with Plaintiff, Hayes diverted funds belonging to Plaintiff by directing third parties to issue payments to him personally and depositing those funds into a separate account not belonging to Plaintiff.

70.    During his employment with Plaintiff, Hayes was entrusted with responsibilities that included interacting with third-party vendors and coordinating transactions involving company property, including scrap metal.

71.    Plaintiff instructed Hayes to send all payments, including cash, to Plaintiff's accounting department.

72.    Upon information and belief, from 2020 through January 2026, Hayes intentionally and without authorization diverted proceeds from the sale of Plaintiff's scrap metal for his own personal use.

73.    Specifically, Hayes directed third parties, including CMCR Florence ("CMCR") and S&P Container Service, LLC ("S&P") to issue payments for scrap metal owned by Plaintiff directly to Hayes personally rather than to Plaintiff.

74.    Upon information and belief, Hayes instructed CMCR and S&P to prepare checks payable to him individually, despite knowing that such proceeds rightfully belonged to Plaintiff.

75.    Upon information and belief, Hayes thereafter accepted, endorsed, and deposited such funds into bank accounts that were not owned by or associated with Plaintiff.

76.    Hayes did not remit any of these funds to Plaintiff and did not disclose his diversion of the proceeds to Plaintiff.

77.     Upon information and belief, Hayes misappropriated at least $50,000 in funds from Plaintiff.

78.     Hayes' actions were unauthorized and constituted a knowing and intentional exercise of dominion and control over Plaintiff's property in a manner inconsistent with Plaintiff's rights.

**G.     Hayes Defames Plaintiff to Other Businesses and Prospective Employees.**

79.     Upon information and belief, following his departure from Plaintiff, Hayes made false and defamatory statements concerning Plaintiff to third parties, including businesses and individuals within Plaintiff's industry and geographic market.

80.     Upon information and belief, Hayes communicated with multiple local businesses, including but not limited to Cayce Company, Hoffman Mechanical Solutions, and Total Comfort Solutions.

81.     Upon information and belief, Hayes further communicated with at least one prospective employee of Plaintiff and that individual's current employer regarding Plaintiff and its business practices.

82.     Upon information and belief, in these communications, Hayes falsely stated that Plaintiff was engaging in, or intended to engage in, improper business practices, including attempting to improperly solicit or "poach" employees from other companies.

83.     Hayes' statements were false. Plaintiff has not engaged in the conduct attributed to it by Hayes.

84.     Hayes published these statements to third parties outside of Plaintiff without privilege or justification.

85. Hayes knew that the statements were false at the time he made them or, alternatively, acted with reckless disregard as to their truth or falsity.

86. Hayes' statements were made with the intent to harm Plaintiff's reputation, disrupt its business operations, and interfere with its ability to recruit and retain employees.

87. Hayes' statements had a direct and immediate impact on Plaintiff's business, including impeding Plaintiff's efforts to hire replacement personnel and causing prospective employees to decline employment with Plaintiff after learning of Hayes' statements.

88. Hayes' statements tended to harm Plaintiff's reputation in the community and to deter third parties—including customers, vendors, and prospective employees—from associating or doing business with Plaintiff.

89. Hayes' statements impugn Plaintiff's integrity and fitness in the conduct of its business and, therefore, constitute defamation per se under South Carolina law.

90. As a result of Hayes' defamatory statements, Plaintiff has suffered damages, including but not limited to harm to its reputation, loss of goodwill, loss of business opportunities, and increased costs associated with recruitment and operations.

**FOR A FIRST CAUSE OF ACTION**
**(Against Crawford and Hayes – Breach of Contract)**

91. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

92. At all relevant times, Crawford and Hayes were employed by Plaintiff.

93. Crawford's and Hayes' employment relationship with Plaintiff gave rise to valid and enforceable contractual obligations, including obligations implied-in-fact and arising from the terms and conditions of their employment.

94. In connection with their employment, both Crawford and Hayes executed written agreements titled "Receipt and Acknowledgement," by which they acknowledged receipt of Plaintiff's employee manual and expressly agreed to abide by its terms and policies.

95. Crawford and Hayes also agreed to be bound by the Confidentiality Agreements.

96. The obligations set forth in Defendants' written agreements are independent of, and in addition to, their duties imposed by law, including duties of loyalty and confidentiality.

97. Crawford's and Hayes' express and implied-in-fact contractual obligations included, among others: a duty to act in good faith and fair dealing with Plaintiff; a duty to act in the best interests of Plaintiff during the course of their employment; a duty not to divert corporate business opportunities or customer relationships belonging to Plaintiff; a duty not to compete with Plaintiff while employed by Plaintiff; a duty to protect and not misuse Plaintiff's confidential and proprietary information.

98. Crawford and Hayes assented to these contractual obligations by accepting employment with Plaintiff, performing services on Plaintiff's behalf, and accepting compensation from Plaintiff.

99. Plaintiff fully performed its obligations under the parties' agreement by, among other things, employing Crawford and Hayes and compensating them for their services.

100. During the course of their employment, Crawford and Hayes breached these contractual obligations arising from their employment.

101. Specifically, upon information and belief, Crawford and Hayes:

    a. Diverted customers, prospective customers, employees, and business opportunities belonging to Plaintiff for their own benefit and/or for the benefit of a competing business;

b. Solicited Plaintiff's customers, prospective customers, employees, and business opportunities for purposes adverse to Plaintiff's interests;

c. Engaged in conduct intended to compete with Plaintiff while still employed by Plaintiff;

d. Otherwise acted in bad faith and contrary to Plaintiff's interests;

e. Disclosed and transmitted Plaintiff's confidential and proprietary information—including customer lists, pricing data, bids, proposals, and internal documents—to Hill and others without authorization;

f. Used Plaintiff's confidential information to compete with Plaintiff and benefit a competing business;

g. Retained and exploited Plaintiff's confidential information following the termination of their employment;

h. Diverted Plaintiff's customers, business opportunities, and employees using Plaintiff's confidential information;

i. Otherwise used Plaintiff's proprietary information in direct violation of their written confidentiality obligations; and

j. Other ways that may be shown at trial.

102. Upon information and belief, Crawford and Hayes coordinated their actions with each other and/or with third parties, including competitors like Hill, to advance their competing interests at Plaintiff's expense.

103. Crawford's and Hayes' conduct constitute a material breach of their contractual obligations to Plaintiff.

104.    As a direct and proximate result of Crawford's and Hayes' breaches, Plaintiff has suffered damages, including but not limited to:

a.  Loss of customers and prospective business opportunities;

b.  Loss of revenue and profits;

c.  Loss of confidential and proprietary information;

d.  Harm to Plaintiff's goodwill and business reputation; and

e.  Compensation paid to Crawford and Hayes during the periods in which they were acting adversely to Plaintiff's interests.

105.    Crawford's and Hayes' breaches were willful, intentional, and undertaken in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover all damages allowed by law.

106.    Crawford and Hayes are liable for all damages, attorney's fees, and costs as a result of their breach of contract.

## FOR A SECOND CAUSE OF ACTION
### (Against Crawford and Hayes – Breach of Duty of Loyalty)

107.    Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

108.    As employees of Plaintiff, Crawford and Hayes owed Plaintiff a duty of loyalty, including a duty to act in good faith and fair dealing and in furtherance of Plaintiff's interests during the course of their employment and a duty to refrain from engaging in conduct adverse to Plaintiff's business.

109.    The duty of loyalty includes, among other things, the obligations to not compete with an employer during the term of employment; not to solicit the employer's customers, prospective customers, or employees for a competing business; not to divert corporate

opportunities belonging to the employer; and not to misuse or disclose the employer's confidential or proprietary information.

110. During the course of their employment with Plaintiff, Crawford and Hayes breached their duty of loyalty to Plaintiff.

111. Specifically, upon information and belief, Crawford and Hayes:

a. Diverted customer inquiries and business opportunities belonging to Plaintiff for their own benefit and/or for the benefit of a competing business;

b. Solicited and induced Plaintiff's employees to resign and accept employment with a competing business;

c. Solicited Plaintiff's customers and prospective customers to shift their business away from Plaintiff;

d. Used, disclosed, and/or retained Plaintiff's confidential and proprietary information for purposes adverse to Plaintiff's interests;

e. Coordinated with each other and/or with third parties, including competitors, to compete against Plaintiff while still employed by Plaintiff;

f. Otherwise engaged in disloyal conduct intended to benefit themselves and others at Plaintiff's expense; and

g. Other ways that may be shown at trial.

112. Hayes further breached his duty of loyalty by misappropriating company funds, including directing payments for company-owned scrap metal to himself and retaining those funds for his personal use.

113. Crawford's and Hayes' conduct constituted knowing and intentional disloyal acts in derogation of their obligations to Plaintiff.

114. As a direct and proximate result of Crawford's and Hayes' breaches of their duty of loyalty, Plaintiff has suffered damages, including but not limited to:

    a. Loss of customers and prospective business opportunities;

    b. Loss of revenue and profits;

    c. Loss of employees and associated costs of replacement and retraining;

    d. Loss of confidential and proprietary information;

    e. Damage to Plaintiff's goodwill and business reputation; and

    f. Compensation paid to Crawford and Hayes during periods in which they were acting adversely to Plaintiff's interests.

115. Crawford's and Hayes' breaches were willful, wanton, and undertaken in conscious disregard of Plaintiff's rights, entitling Plaintiff to further recover forfeiture of compensation, disgorgement of ill-gotten gains, and punitive damages as allowed by law.

116. Crawford and Hayes are liable for all damages, attorney's fees, and costs as a result of their breach of their duty of loyalty.

## FOR A THIRD CAUSE OF ACTION
**(Against Crawford and Hayes – Breach of Contract Accompanied by a Fraudulent Act)**

117. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

118. At all relevant times, Crawford and Hayes were employed by Plaintiff and were parties to valid and enforceable agreements.

119. Under those agreements, Crawford and Hayes expressly agreed that they would not disclose, use, or exploit Plaintiff's confidential and proprietary information, both during their employment and following the termination of their employment.

120. Crawford and Hayes breached their contractual obligations to Plaintiff by, among other things:

   a. Disclosing Plaintiff's confidential and proprietary information—including customer lists, pricing data, bids, proposals, and internal documents—to Hill and other third parties;

   b. Using such confidential information to compete against Plaintiff and benefit a competing business;

   c. Retaining and exploiting Plaintiff's confidential information following the termination of their employment; and

   d. Other ways that may be shown at trial.

121. Crawford and Hayes acted with fraudulent intent in breaching their contractual obligations.

122. Specifically, Crawford and Hayes formulated and executed a plan, while still employed by Plaintiff, to misappropriate Plaintiff's confidential information, divert its customers and employees, and use Plaintiff's own proprietary information to compete against Plaintiff for their own benefit and for the benefit of Hill.

123. At the time they accessed, retained, and transmitted Plaintiff's confidential information, Crawford and Hayes had no intention of complying with their contractual obligations and instead intended to misuse that information in violation of those agreements.

124. Crawford's and Hayes' breaches were accompanied by fraudulent acts separate and distinct from the breach itself, including, but not limited to:

a. Secretly forwarding Plaintiff's confidential business information, including bids, pricing data, and customer communications, to personal email accounts and to Hill while still employed by Plaintiff;

b. Concealing their misconduct from Plaintiff while continuing to access Plaintiff's systems and confidential information under the guise of performing their job duties;

c. Diverting customer opportunities and communications away from Plaintiff and toward Hill while still acting as Plaintiff's employees;

d. Coordinating with Hill and others to use Plaintiff's confidential information to compete against Plaintiff;

e. Recruiting Plaintiff's employees for a competing business while simultaneously representing themselves as acting in Plaintiff's interests; and

f. Other ways that may be shown at trial.

125. These acts involved dishonesty, bad faith, and a deliberate attempt to deceive Plaintiff, and were undertaken for the purpose of facilitating and concealing Defendants' breaches of contract.

126. Such fraudulent acts were not merely incidental to the breach, but were undertaken to facilitate, conceal, and maximize the benefit of Defendants' contractual breaches.

127. As a direct and proximate result of Crawford's and Hayes' breach of contract accompanied by fraudulent acts, Plaintiff has suffered damages, including but not limited to:

a. Loss of customers and prospective business opportunities;

b. Loss of revenue and profits;

c. Loss and misuse of confidential and proprietary information;

d. Loss of employees and associated costs;

e. Damage to Plaintiff's goodwill and reputation; and

f. Costs and expenses associated with investigating and responding to Defendants' misconduct.

128. Crawford's and Hayes' conduct was willful, intentional, and undertaken in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

129. Accordingly, Crawford and Hayes are liable for all damages, including punitive damages, attorney's fees, and such other relief as this Court deems just and proper.

**FOR A FOURTH CAUSE OF ACTION**
**(Against All Defendants – Tortious Interference with Contractual Relations)**

130. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

131. At all relevant times, Plaintiff maintained valid and enforceable contractual relationships with its employees and certain existing customers.

132. Hayes and Crawford were employed by Plaintiff and had actual knowledge of Plaintiff's contractual relationships with its employees and customers.

133. Hill had knowledge of these contractual relationships through its communications and coordination with Hayes and Crawford.

134. Upon information and belief, Defendants intentionally and improperly interfered with Plaintiff's existing contractual relationships.

135. Specifically, Defendants solicited Plaintiff's employees, including at least seven field technicians, to terminate their employment with Plaintiff and accept employment with Hill; encouraged and induced such employees to breach their employment relationships with Plaintiff; and solicited and directed existing customers to discontinue or reduce their business with Plaintiff in favor of Hill.

136. Defendants' interference was intentional and unjustified and was undertaken for the purpose of advancing their own interests at Plaintiff's expense.

137. As a direct and proximate result of Defendants' actions, Plaintiff's employees terminated their employment contracts with Plaintiff, and Plaintiff's existing customers reduced or terminated their business relationships with Plaintiff.

138. Defendants' conduct constitutes tortious interference with existing contractual relations under South Carolina law.

139. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to:

    a. Loss of employees;

    b. Costs associated with recruiting and training replacement personnel;

    c. Loss of revenue from existing customers; and

    d. Harm to Plaintiff's goodwill and business relationships.

140. Defendants acted willfully, wantonly, and with conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

141. Defendants are liable for all damages, attorney's fees, and costs as a result of their tortious interference with Plaintiff's contractual relations.

142. Plaintiff is further entitled to injunctive relief to halt Defendants' tortious interference, which they refuse to cease and desist from.

### FOR A FIFTH CAUSE OF ACTION
**(Against All Defendants – Tortious Interference with Prospective Contractual Relations)**

143. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

144. At all relevant times, Plaintiff had reasonable, predictable, and protectable expectations of entering into valid business relationships and contracts with prospective customers and continuing business opportunities.

145. Hayes and Crawford were aware of these prospective business relationships by virtue of their employment with Plaintiff, including knowledge of ongoing bids, customer inquiries, and potential projects.

146. Hill acquired knowledge of Plaintiff's prospective business relationships through its coordination with Hayes and Crawford and through the information provided by them.

147. Upon information and belief, Defendants intentionally and improperly interfered with Plaintiff's prospective contractual relationships.

148. Specifically, Defendants used Plaintiff's confidential information, including customer contacts, job details, and bid information, to solicit prospective customers; diverted prospective business opportunities and customer inquiries away from Plaintiff and toward Hill; and interfered with Plaintiff's ability to secure contracts that were reasonably expected to materialize.

149. Defendants acted with the intent to disrupt Plaintiff's prospective business relationships and to appropriate those opportunities for their own benefit.

150. Defendants' conduct was wrongful, for an improper purpose, and by improper means.

151. As a direct and proximate result of Defendants' actions, Plaintiff lost prospective contracts and business opportunities that would have otherwise been realized.

152. Defendants' conduct constitutes tortious interference with prospective contractual relations under South Carolina law.

153. As a direct and proximate result, Plaintiff has suffered damages, including but not limited to:

    a. Lost business opportunities;

    b. Lost profits from contracts that would have been obtained; and

    c. Harm to Plaintiff's competitive position and goodwill.

154. Defendants acted willfully, wantonly, and with conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

155. Defendants are liable for all damages, attorney's fees, and costs as a result of their tortious interference with Plaintiff's prospective contractual relations.

156. Plaintiff is further entitled to injunctive relief to halt Defendants' tortious interference with Plaintiff's prospective contractual relations, which they refuse to cease and desist from.

**FOR A SIXTH CAUSE OF ACTION**
**(Against All Defendants – Violation of the South Carolina Trade Secrets Act)**

157. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

158. Plaintiff owns certain confidential and proprietary information that constitutes trade secrets within the meaning of the South Carolina Trade Secrets Act ("SCTSA"), including but not limited to, customer lists and customer contact information; prospective customer information and ongoing job opportunities; pricing information, bids, and proposals; internal business documents and data; and business methods, processes, and operational practices.

159. Plaintiff derives independent economic value from its trade secrets not being generally known to, and not being readily ascertainable by, other persons who could obtain economic value from their disclosure or use.

160. Plaintiff has taken reasonable measures under the circumstances to maintain the secrecy of its trade secrets, including restricting access to such information to employees with a business need to know and maintaining such information within its internal systems.

161. Hayes and Crawford, as employees of Plaintiff, had access to Plaintiff's trade secrets and knew or should have known that such information was confidential and proprietary to Plaintiff.

162. Hill knew or had reason to know that the information provided to it by Hayes and Crawford constituted Plaintiff's trade secrets and was acquired through improper means.

163. Upon information and belief, Defendants have willfully and maliciously misappropriated, wrongfully disclosed, and wrongfully used Plaintiff's trade secrets, and continue to do so, by knowingly using them and providing them to Hill for Defendants' own benefit without consent and to the detriment of Plaintiff.

164. Specifically, Defendants:

   a. Acquired Plaintiff's trade secrets through improper means, including unauthorized transmission and disclosure of confidential information by Hayes and Crawford to Hill;

   b. Disclosed Plaintiff's trade secrets to Hill without Plaintiff's consent; and

   c. Used Plaintiff's trade secrets to solicit and divert Plaintiff's customers and prospective customers, compete against Plaintiff, and advance Hill's business interests.

165. Defendants' acquisition, disclosure, and use of Plaintiff's trade secrets were unauthorized and constitute misappropriation under the SCTSA.

166.    Defendants' conduct was willful, malicious, and undertaken in conscious disregard of Plaintiff's rights.

167.    As a direct and proximate result of Defendants' misappropriation, Plaintiff has suffered damages, including but not limited to:

   a.  Loss of customers and prospective business opportunities;

   b.  Loss of revenue and profits;

   c.  Loss of the value of its trade secrets; and

   d.  Harm to Plaintiff's competitive position and goodwill.

168.    Defendants are liable for all damages, attorney's fees, and costs as a result of their violations of the SCTSA.

169.    Unless enjoined by this Court, Defendants will continue to use and/or disclose Plaintiff's trade secrets, causing Plaintiff irreparable harm for which there is no adequate remedy at law.

## FOR A SEVENTH CAUSE OF ACTION
**(Against All Defendants – Violation of the South Carolina Unfair Trade Practices Act)**

170.    Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

171.    At all relevant times, Defendants were engaged in trade or commerce within the State of South Carolina.

172.    The South Carolina Unfair Trade Practices Act ("SCUTPA") declares unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

173.    Upon information and belief, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to:

a. Misappropriating Plaintiff's confidential and proprietary business information and using such information to compete against Plaintiff;

b. Soliciting and diverting Plaintiff's customers and prospective customers through the use of improperly obtained information;

c. Inducing Plaintiff's employees to terminate their employment and accept employment with a competitor;

d. Coordinating their conduct to gain an unfair competitive advantage over Plaintiff;

e. Making false or misleading statements to third parties regarding Plaintiff's business practices; and

f. Other ways that may be shown at trial.

174. Defendants' conduct was unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff.

175. Defendants' unfair and deceptive acts and practices have an impact on the public interest, in that:

a. Defendants' conduct reflects a business model capable of repetition involving the targeting of competitor workforces and confidential information;

b. The misappropriation and misuse of business information to unfairly compete threatens other businesses in the marketplace; and

c. Defendants' deceptive statements and unfair competition undermine fair and open competition in the relevant industry.

176. Defendants' actions were willful and knowing and were undertaken in conscious disregard of Plaintiff's rights.

177. As a direct and proximate result of Defendants' violations of SCUTPA, Plaintiff has suffered ascertainable losses, including but not limited to:

    a. Loss of customers and prospective business opportunities;

    b. Loss of revenue and profits;

    c. Loss of employees and associated costs; and

    d. Harm to Plaintiff's goodwill and competitive position.

178. Plaintiff is entitled to recover its actual damages, which are subject to trebling under SCUTPA.

179. Plaintiff is further entitled to recover its reasonable attorney's fees and costs pursuant to SCUTPA.

180. Plaintiff is further entitled to injunctive relief enjoining Defendants' unfair competitive practices and deceptive actions, which they refuse to cease and desist from.

### FOR AN EIGHTH CAUSE OF ACTION
### (Against All Defendants – Civil Conspiracy)

181. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

182. At all relevant times, Hayes and Crawford were employees of Plaintiff, and Hill was a competitor of Plaintiff.

183. Upon information and belief, Defendants combined, agreed, and formed a common design and understanding to engage in unlawful conduct for the purpose of injuring Plaintiff and advancing their own competing business interests.

184. The object of the conspiracy was to improperly compete with Plaintiff by misappropriating Plaintiff's confidential and proprietary information, diverting Plaintiff's

customers and prospective customers, and inducing Plaintiff's employees to leave Plaintiff's employment for the benefit of Hill.

185. In furtherance of the conspiracy, Defendants committed overt acts including, but not limited to:

a. Transmitting Plaintiff's confidential information, including customer, job, and bid information, from Hayes and Crawford to Hill;

b. Soliciting and inducing at least seven of Plaintiff's field technicians to resign from Plaintiff and accept employment with Hill;

c. Soliciting and diverting Plaintiff's customers and prospective customers to Hill;

d. Coordinating efforts to use Plaintiff's internal business information to compete unfairly against Plaintiff;

e. Facilitating access by Hill's agents and representatives to Plaintiff's premises, processes, and business methods for improper purposes; and

f. Other ways that may be shown at trial.

186. Defendants acted in concert and pursuant to their agreement, each providing substantial assistance to one another in accomplishing the unlawful objectives of the conspiracy.

187. Defendants' acts were intentional, willful, and undertaken with the purpose of harming Plaintiff and benefiting Defendants.

188. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered special damages separate and distinct from the damages arising from Defendants' other wrongful conduct, including but not limited to:

a. Coordinated and accelerated loss of multiple employees occurring simultaneously, which would not have occurred absent Defendants' concerted action;

b. Compounded loss of customers and business opportunities resulting from Defendants' joint efforts;

c. Increased competitive harm due to the combined use of Plaintiff's confidential information; and

d. Heightened disruption to Plaintiff's operations and business relationships.

189. Defendants' conduct constitutes civil conspiracy under South Carolina law.

190. Defendants acted with malice, willfulness, and conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages.

191. Defendants are jointly and severally liable for each other's bad acts done in furtherance of the conspiracy and for all of Plaintiff's damages, attorney's fees, and costs.

**FOR A NINTH CAUSE OF ACTION**
**(Against All Defendants – Conversion)**

192. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

193. At all relevant times, Plaintiff owned and had the right to immediate possession of certain personal property, including but not limited to:

a. Funds and proceeds derived from the sale of scrap metal generated by Plaintiff in the ordinary course of its business; and

b. Business assets and materials, including customer and prospective customer information, job data, bid information, internal company documents, confidential and proprietary information, trade secrets, and Plaintiff's goodwill and customer relationships.

194. Upon information and belief, Hayes, without authorization or justification, exercised dominion and control over Plaintiff's property in a manner inconsistent with Plaintiff's rights.

195. Specifically, from approximately 2020 through January 2026, Hayes:

a. Directed third parties, including CMCR Florence and S&P Container Service, LLC, to issue payments for scrap metal owned by Plaintiff directly to Hayes rather than to Plaintiff;

b. Caused checks representing proceeds of Plaintiff's scrap metal to be made payable to Hayes personally; and

c. Accepted, endorsed, and deposited such payments into accounts not belonging to Plaintiff.

196. Hayes retained such proceeds for his personal use and failed to remit the funds to Plaintiff.

197. Hayes's conduct constitutes an unauthorized and wrongful exercise of dominion and control over Plaintiff's property and, therefore, constitutes conversion under South Carolina law.

198. Upon information and belief, Defendants wrongfully exercised dominion and control over Plaintiff's business assets and materials.

199. Specifically, Hayes and Crawford, while employed by Plaintiff and without authorization:

a. Accessed, copied, retained, and removed Plaintiff's confidential and proprietary information, including customer lists, job data, and bid information;

b. Transmitted and/or disclosed such information to Hill; and

c.  Removed, retained, or used internal company documents and materials belonging to Plaintiff.

200. Upon information and belief, Hill knowingly received, accepted, retained, and used Plaintiff's property, including confidential information, internal documents, and trade secrets, with knowledge that such materials belonged to Plaintiff and were obtained without authorization.

201. Defendants used Plaintiff's property to:

a.  Solicit and divert Plaintiff's customers and prospective customers;

b.  Improperly compete against Plaintiff using Plaintiff's own internal information and materials; and

c.  Appropriate and impair Plaintiff's customer relationships and goodwill.

202. Defendants' conduct constitutes an unauthorized and wrongful assumption and exercise of dominion and control over Plaintiff's business assets, company materials, and goodwill, to the exclusion of Plaintiff's rights.

203. As a direct and proximate result of Defendants' conduct:

a.  Plaintiff has been deprived of the use and benefit of its scrap metal proceeds wrongfully converted by Hayes; and

b.  Plaintiff has suffered the loss and misuse of its business assets, confidential information, internal documents, and goodwill as a result of Defendants' conduct.

204. Plaintiff has suffered damages in an amount to be proven at trial, including but not limited to:

a.  At least $50,000 in converted scrap metal proceeds;

b.  Loss of customers and prospective business opportunities;

c. Loss of the value of its confidential information, trade secrets, and internal materials; and

d. Loss of Plaintiff's goodwill and business relationships.

205. Defendants' conduct was intentional, willful, and undertaken in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

206. Defendants are liable for all damages, attorney's fees, and costs as a result of their conversion.

207. Plaintiff is further entitled to injunctive relief mandating Defendants' return of Plaintiff's trade secrets and company materials and destroying any and all copies thereof.

## FOR A TENTH CAUSE OF ACTION
### (Against Hayes – Defamation)

208. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

209. Upon information and belief, Hayes made false and defamatory statements concerning Plaintiff to third parties, including but not limited to local businesses such as Cayce Company, Hoffman Mechanical Solutions, and Total Comfort Solutions, as well as other individuals, including prospective employees of Plaintiff.

210. Specifically, Hayes falsely stated that Plaintiff was engaging in or intended to engage in improper business practices, including attempting to poach employees from other companies.

211. Hayes' statements were false. Plaintiff has not engaged in the conduct attributed to Plaintiff by Hayes.

212. Hayes published these false statements to third parties without privilege or justification.

213. Hayes knew the statements were false or acted with reckless disregard for their truth or falsity.

214. Hayes' statements tended to harm Plaintiff's reputation and to deter third parties from associating or dealing with Plaintiff.

215. Hayes' statements constitute defamation under South Carolina law.

216. Additionally, Hayes' statements impugn Plaintiff's integrity and fitness in the conduct of its business and profession and, therefore, constitute slander per se, giving rise to a presumption of malice and damages as a matter of law.

217. As a direct and proximate result of Hayes' statements, Plaintiff has suffered damages, including but not limited to its business reputation, loss of goodwill, and lost business opportunities.

218. Hayes acted willfully, wantonly, and with conscious disregard for Plaintiff's rights and reputation, entitling Plaintiff to punitive damages.

### FOR AN ELEVENTH CAUSE OF ACTION
**(Against All Defendants – Injunction)**

219. Plaintiff realleges and incorporates its previous allegations set forth above as if set forth fully herein.

220. Defendants are using Plaintiff's own confidential information to compete against it in real time, causing immediate and ongoing harm that cannot be fully remedied by monetary damages.

221. Defendants have engaged in and continue to engage in wrongful conduct, including but not limited to:

    a. Misappropriating Plaintiff's Confidential Information and Trade Secrets;

    b. Soliciting and diverting Plaintiff's customers and prospective customers;

      c.    Inducing Plaintiff's employees to terminate their employment and join a competing business; and

      d.    Using Plaintiff's proprietary information and business relationships to compete unfairly against Plaintiff.

222.    Defendants' conduct is ongoing and poses a substantial and immediate threat of continued harm to Plaintiff.

223.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law, including:

      a.    Loss of confidential and proprietary information, including trade secrets;

      b.    Continued diversion of customers and business opportunities;

      c.    Loss of goodwill and business reputation; and

      d.    Loss of competitive advantage in the marketplace.

224.    Monetary damages alone are insufficient to fully compensate Plaintiff for these injuries.

225.    Plaintiff is likely to succeed on the merits of its claims because Plaintiff has shown that its contractual and legal rights that have been breached and violated by Defendants and continue to be breached and violated by Defendants, causing Plaintiff present and future injury and damages.

226.    The issuance of injunctive relief is in the public interest because it promotes fair competition and protects confidential business information.

227.    Unless enjoined by this Court, Defendants will continue to engage in the wrongful conduct described herein, causing ongoing and irreparable injury to Plaintiff.

228.    There is no adequate remedy at law for Defendants' continued violations of their contractual and legal obligations, and only the requested injunctive relief will protect Plaintiff's contractual and legal rights.

WHEREFORE, Plaintiff requests the following relief:

a.    Judgment in favor of Plaintiff as to all claims and relief;

b.    An Order preliminarily and permanently enjoining Defendants, and all persons acting in concert with them, from:

  i.    Using, disclosing, or retaining Plaintiff's confidential information, trade secrets, and proprietary materials;

  ii.    Soliciting or doing business with Plaintiff's customers or prospective customers using information obtained from Plaintiff;

  iii.    Soliciting or inducing Plaintiff's employees to leave their employment with Plaintiff;

  iv.    Directly or indirectly competing with Plaintiff using Plaintiff's confidential information or improperly obtained business materials; and

  v.    Retaining any documents, data, or information belonging to Plaintiff;

c.    An Order requiring Defendants to return all company property, including all documents, electronic data, and materials containing Plaintiff's confidential or proprietary information, and to certify their compliance;

d.    An Order requiring Defendants to identify all persons and entities to whom Plaintiff's confidential or proprietary information has been disclosed;

e.    An award for actual, compensatory, consequential, liquidated, special, treble, and punitive damages, plus prejudgment interest;

f.    An award of Plaintiff's attorney's fees, costs, and expenses associated with this matter;

g.      A jury trial; and

h.      Any and all other appropriate relief as is just and proper under the circumstances.

Respectfully submitted,

**MOORE & VAN ALLEN PLLC**

*s/ Daniel R. Fuerst*
Christopher A. Ogiba (D.S.C. No. 9042)
Daniel R. Fuerst (D.S.C. No. 12616)
Charlotte B. Winckler (D.S.C. No. 13888)
78 Wentworth Street
Charleston, SC 29413-2828
Telephone: (843) 579-7000
Facsimile: (843) 579-7099
chrisogiba@mvalaw.com
danielfuerst@mvalaw.com
charlottewinckler@mvalaw.com

*Attorneys for Plaintiff*

August 6, 2026

## VERIFICATION

I, Dana Gay, being duly sworn, depose and state as follows:

1.      I am the Co-President and Chief Administrative Officer of D&L, LLC d/b/a D&L, Inc. ("D&L" or "Plaintiff"), the Plaintiff in the above-captioned action. In this capacity, I am familiar with D&L's business operations, employees, customers, and confidential business information.

2.      I have read the foregoing Verified Complaint and know or believe the contents thereof to be true. The matters stated therein on information and belief I believe to be true based on my review of D&L's business records, communications, and my discussions with other D&L personnel.

3.      I declare under penalty of perjury that the foregoing is true and correct.


_____
Dana Gay
Co-President and Chief Administrative Officer


Sworn to before me

This 6th day of August 2026

Nikki Maness _____
Notary Public for Arkansas
My Commission Expires Feb. 15, 2033


```
NIKKI MANESS
Notary Public - Arkansas
Mississippi County
Commission # 12392111
My Commission Expires Feb 15, 2033
```